The next case on our schedule for oral argument this morning is number 182893, Lynn v. Garland. We have Mr. Bardavid. Bardavid, whatever is fine. Yes, please proceed. Good morning, honors. May it please the court. My name is Joshua Bardavid, attorney for petitioner Mr. Lynn. The immigration judge's negative credibility determination was not supported by substantial evidence. Nor was the immigration judge's finding that Mr. Lynn failed to corroborate his claim of past persecution and a future fear of persecution. Turning to credibility, the parties have spent a lot of ink discussing whether or not Mr. Lynn's, called his aunt, the location of his aunt at the time Mr. Lynn arrived in the United States, whether she was in Wisconsin or whether she was in Texas. But what the immigration judge, the board and the government do not provide is why that is relevant to Mr. Lynn's credibility. Suppose it isn't. Suppose you put that aside and frame the question in terms of whether the immigration judge can base an adverse credibility finding on invasiveness and answering questions about his aunt's visit to China, whether the police charged him. Those exchanges seem evasive. And I mean, maybe they are not evasive, but they can be construed as evasive by an immigration judge. Why wouldn't that be enough to sustain a credibility finding that is adverse? The first answer, your honor, is that that is a question for the agency to answer. So essentially, if your honor is saying we can strip the immigration judge's negative credibility determination or strip part of his negative credibility determination with respect to the location of his aunt and just focus on the evasiveness, that would be appropriate then for the matter to be remanded to the agency to answer whether that is sufficient for a negative credibility determination. This is particularly true given that the immigration judge's focus of the negative credibility determination seemed to be mostly based upon, in fact, the location of his aunt upon arrival. However, as a sole basis, whether that is his supposed evasiveness as to his aunt's visit to China in September of 2011, again, the judge doesn't explain why that's relevant to Mr. Lin's claim of persecution based upon his Christian beliefs. Excuse me for interrupting, but some of this was relevant to the timeliness of his asylum claim, and it was not irrelevant to the overall proceedings generally. And I'm not aware of any precedent directing us to disregard inconsistencies or evasiveness with regard to a significant legal issue that even if that isn't the ultimate legal issue that determines the outcome of the petition. Am I missing something? I mean, the IJA and the BIA both are looking at evasiveness in the record as well as this inconsistency and evasiveness on several different points. Yes, Your Honor, the timing of his aunt's visit to China in September of 2011 is relevant to the timeliness of Mr. Lin's application for asylum. However, the timeliness of Mr. Lin's application for asylum is not before this court because the board presumed it to be filed timely. I understand. I understand that. But I'm asking whether that actually should make a difference, because the IJA and the BIA are looking at the record overall about his veracity and making a determination based on several different factors that they call both demeanor and evasiveness, that he was his testimony overall was not credible and that the corroboration that he offered wasn't sufficient either independently to establish grounds for relief or to rehabilitate its testimony, its concerns in light of these observations. So why is that wrong? I would turn the court's attention then to Galby, Attorney General 891 F3rd 67, page 77 of that decision. The full paragraph, I think, starting with the word first, the sentence is first, although the Real ID Act authorizes the IJA to rely on any inconsistencies, not all inconsistencies are the same. And I think that entire paragraph is entirely relevant and essentially provides your honor's answer, which is that once we strip out the the irrelevant issues and try to determine whether or not this reflects upon his claim of being Christian. And so I think there's some jumbling of credibility and corroboration. The only credibility citation by the judge is the issue of the location of his aunt when he arrived in the United States. And then a very brief sentence saying that he was evasive in answering questions about what his aunt was wearing at the time she visited China in 2011. But wasn't there, I mean, there was a series of questions in the transcript that said he suggested he couldn't remember how long she had stayed, whether gifts were exchanged and what the whole visit was was about that the IJA seemed to find very frustrating. It wasn't just a lack of recollection as to what she was wearing during that time. Yes, your honor. He does say he doesn't remember what she was wearing. He doesn't really answer the question. Undoubtedly, he doesn't. He's not specific as to whether gifts were exchanged. But again, we are now discussing something that was really only relevant to the timeliness of Mr. Lin's application and doesn't shed any light just just from a pure logic sense. It doesn't shed any light on his claim for for past persecution. And I would also note, your honor, that I mean, if he if he lied about what his name was, that would be a basis for an adverse credibility finding, even though it would have nothing to do with whether he was persecuted for his for his faith in China. And I would then respond by pointing out that the the question of, yes, the question of his name and his identity is actually a statutory requirement. But the question is, is whether or not his aunt, what she was wearing or gifts were exchanged if he was being evasive. Then again, as Judge Carney says, we have to look at the record as a whole. And looking at the record as a whole, the fact that his aunt testified, the judge didn't find his aunt incredible. The judge didn't address the aunt's credibility at all. If the judge was so deeply concerned about what she was wearing or whether gifts were exchanged, she was there to provide testimony as to that. And she did testify that she visited China. She did testify as to her location in Wisconsin at the time of his arrival in the United States. So, again, assuming he was possibly evasive, the judge then does need to return to, as the real ID requires, turn to the record as a whole. And the judge didn't do that. The judge did not reconcile his determination that Mr. Lin was evasive. And that was sufficient under the Real ID Act to deny his claim with the fact that not only did the aunt testify, but his sister testified as to both the at the time of his baptism, that he was baptized, that she got a call from the grandmother in China telling his sister that he was baptized that day in China. So there was lots of corroborating witnesses presented. There were three, in fact. Am I correct that there was an alternative ground for denying relief, which was that there was an insufficient showing of past persecution? There was nothing to show the severity of the beating that he claimed to have received? Yes, that was. That was an alternate finding, and as we point out in our brief, the first question is, is that the judge did not make a assertion that the documents Judge Han was seeking were, in fact, reasonably available. Mr. Lin specifically testified that he went to a clinic afterwards. He was not given any papers. They looked at him. They said this was these were surface wounds that it didn't require surgery. It didn't require stitches that he had bruising and he was given pain medication and sent on his way. The judge does not explain why it would be reasonable to expect in that circumstance where he went to a private clinic for there to be documents available. Why does he need documents if his own testimony establishes that the result of the beating was just welts and some surface damage? I mean, I'm not discounting it. Nobody wants it. But the question is, does that amount to such severity that a person must leave the country in which he's born and move to Brooklyn? Well, that's not the only reason that he left. He left because he couldn't practice his Christian beliefs. It wasn't just that he was beaten, but he was not free to practice his religious beliefs. That's why he left. And your honor, as you just asked the precise question, why is that? Why would it be relevant or why would it be expected for him to have those documents? And the judge doesn't explain that. And if you're if we're assuming his his the credibility was the negative credibility determination was insufficient, then the corroboration requirement on its own would be insufficient to deny the claim. Because, again, if we're presuming his credibility, why wouldn't his testimony, along with his testimony, along with his sister's testimony, along with his fellow church members testimony, as well as the other evidence in the record, be sufficient? Absent a negative credibility determination that was unsupported by the record. Let me keep let me keep you one more minute, please. Could you in my own thinking about the relevance of his testimony and vagueness about the details of his aunt's visit? Was that testimony and the timing of his aunt's visit directly related to the timing of his asylum application? Did it set up like a mark from which he determined to leave or what exactly depended or did not depend on that testimony? That that factual issue, as far as I can glean, and I don't believe that there's anything to indicate otherwise, was strictly being presented and offered for the basis of the timeliness of his application to confirm that he would, in fact, was still in China in September of 2011. And again, since that issue was not sustained by the board and it's not before the court, we would assert that it's irrelevant. And what did he testify about when he left China? He also somewhat vague about that. Surprisingly, the exact date that he left China was provided on the asylum application. If the court gives me one second, I can take a look. He was not as specific when he testified, but he does provide the exact date of his departure, which is on the asylum application. Yeah. In the testimony, I thought that was also surprising because that's such a momentous event in someone's life. I do understand. But given that he the the the route that he took to the United States and the various events, you know, it is understandable that he might not be able to recall the exact date, especially several years later by the time it comes around to him providing testimony before the court. And the exact date is provided on page 588 of the record. He indicates that he left June 24th, 2012. All right. Thank you very much. You have two minutes of rebuttal. We'll hear from the government. Thank you. May it please the court. I'm Sarah Byram appearing on behalf of the United States Attorney General. The court should deny this petition for review. The agency's adverse credibility finding grounded in the totality of the circumstances is supported by substantial evidence. The court looked to the totality and to the entire context of his claim. Nothing was considered in isolation to conclude that petitioner's claim about his alleged Christian house church harm was just not credible. Turning first to this to the unreconciled inconsistency regarding his his aunt, which was the topic of much discussion for my colleague's argument. That inconsistency in and of itself, where he misplaces his aunt in Texas when she's from Wisconsin, that inconsistency is supported by the record in his testimony. No, it's supported. It is inconsistent. That's true. But when he said he called his aunt, his own lawyer said, well, you called her in Texas, right? And he said, yeah, but the answer was sort of fed to him by by his lawyer. And besides, somebody arrives in a foreign country. How do they know where every one of the states are? I don't know where the various provinces of China are. A few a few responses to that. First, he had confused the location of his aunt before his counsel had stepped in to try to clarify. Second, his aunt has never been in Texas. She's been in Wisconsin, which is a bit far away from Texas. Even his his counsel, for example, called it a mistake of a thousand miles. And again, this inconsistency itself, the agency considered it under the totality of the circumstances. So they looked at this here, this inconsistency. And that was in addition to, of course, his evasive and non-responsive demeanor elsewhere. So let me ask you about that. I've had difficulty thinking about demeanor when basically we're looking at the record here. And, you know, we see a series of questions that he fails to answer and or gives kind of waffling answers to and so on. But I didn't see anything that I strictly would construe as demeanor. That is shifting in the chair, not looking at the questioner. You know, physical manifestations of uneasiness and potentially of untruthfulness. Were there actual observations made by the IJ that we are not privy to? Or was it just this description of characterization, I guess, of the question and answer reflected in the transcript? So to my knowledge, there is no physical or there's no descriptions of physical actions like shifting in the chair, things that you were describing. It is it is just within the testimony, the testimony, the colloquy, sort of the evasiveness of not answering, having to ask questions again, trying to elicit answers. And that that really is what seems to be at the heart of this finding. And, of course, you know, the immigration judge having having been in the seat, seeing it personally, those those findings are significant. They're afforded greatly. But we might we might defer a little less if it's grounded primarily just in the transcript that we all have access to. The BIA had access to we have access to. We see the Q&A. Isn't that right? That that's reasonable. I would I would also respond to say that that the court, they have held the decisions that they can be more confident in demeanor findings where they're supported by inconsistent testimony. Here, of course, we have the odd. There were some inconsistencies about her visit to China. The the whether or not he was charged and this this was all part of the adverse credibility finding. And then, of course, we have the fact that that petitioner did not bring corroborating evidence that rehabilitated his testimony. So let me ask you, let me ask you about the government's position about corroborating evidence. I'm a little confused about how we should look at documents that are presented as corroborating. You know, obviously, some of the people who provided the documents weren't available for cross-examination. Some things were authenticated, some things less authenticated. But nonetheless, there were a number of documents purporting to corroborate his testimony. But there there seems to be law that once there's been an adverse credibility finding made that you have to have kind of super corroborating evidence in documentary form to rehabilitate unless they kind of clearly establish an independent basis for relief. Could you explain what the government's position is about how we should look at the documents presented as corroborating? So here the the court should look to the the the evidence that he brought. And the agency did not make a separate independent corroborating evidence. It all went to his burden of proof. So they are saying that the evidence that you submitted doesn't rehabilitate your inconsistent testimony. It doesn't close up the holes of your story. So could we, given the adverse credibility finding, could we put his own testimony aside and look at the documents presented in the case as corroborating and just make a determination about whether that independently would be sufficient to establish his claim? It it seems here it's I don't want to give you a yes or no. It seems here that the way that the agency looked at his corroborating evidence was part of the burden of proof. And within the context of the entire adverse credibility finding, it does not appear that they made an independent that they that they denied his claim based on an independent corroborating evidence requirement. And so here it's our position that the court would have to look at and and affirm the adverse credibility based on the totality of the circumstances, which includes the non the corroborating evidence as part of that, not as independent from the adverse credibility finding. OK, thank you. To follow up, actually, with a different question. So if we were to determine that the that the IJ gave too much weight to the Wisconsin-Texas inconsistency, could we be confident? Why should we be confident, given the corroborating evidence that was deduced and the rest of the record, that the agency would reach the same decision if they were directed to ignore that one interchange about Texas versus Wisconsin? The court can be confident that they would reach the same conclusion the agency would, because, again, this is considered in the totality of the circumstances. So even if you even if you take away, for example, that inconsistency in and of itself, all of the other issues or the problems, the deficiencies of his claim, as noted by the agency, still remain in terms of the evasive demeanor, him not being able to answer questions about whether he was charged, which, of course, goes to his direct claim of harm. Things about his aunt's visit, things about, you know, medical documentation. Where is his baptism certificate? And I would point out that the lack of medical documentation is important and is certainly a reasonable, a reasonable basis for the agency to rely on because petitioner in his testimony. And it's interesting to note generally that there are periods of petitioners testimony where he's very direct and specific about some things and not so much about others. This is one of them with his harm in his testimony. He's pretty specific. He says he was beaten severely. He remembers the amount of days that he was detained. He was beaten with rubber batons really badly. He was kicked and stepped on his head. He was detained for nine days. His dad in his letter says he's too weak to walk. And so he he's he's, you know, set out this claim of great harm and being beaten. And then he doesn't have any medical documentation. He says he went to a private doctor, but he's never followed up, even to just get some kind of letter from that doctor to say, yes, I saw this patient. And the doctor says or he claims the doctor says he just had surface wounds. Well, that in and of itself is doesn't exactly jive with his testimony and his rather specific testimony about the experiences that he had in his detention. And so there is another example of where the agency under the totality of the circumstances and in the entire context of his claim, thought that it was significant and found that to be a significant factor. So the the inconsistency by his aunt. Yes, it may not be material. It doesn't have to be material under the Real ID Act, as we know. But it was really taken in context under the totality of the circumstances. So even if you take that out, all of the other issues of his testimony of his claims still still remain. And I just briefly wanted to mention Gao. Opposing counsel mentions that Gao supports his claim with respect to the with respect to his arguments. But actually, Gao is is a double edged sword. It supports the government's claim here as well, because in Gao, the court recognized that other aspects of Shouse testimony, such as his vacillating answers regarding how it was reported to the police, his demeanor. They support that adverse credibility finding. And here we have similar things in this case. We have the evasive demeanor. We have inconsistencies. We have the lack of sufficient corroborating evidence. And those altogether under the totality of the circumstances support the agency's adverse credibility finding. Thank you very much. Thank you for your argument. Mr. David, you have reserved two minutes for rebuttal here. The government indicates that the record seems to indicate or that the immigration judge seems to find or the agency seems to find a lot of speculation. And it's precisely why this court in Guam for 53 of third one twenty nine said it's the agency's decision stands and falls on its express reasoning. And it's not for this court to guess. The negative credibility determination was clearly not supported by the record. And the most appropriate course would be to remand the matter back to the agency to determine whether or not, in fact, the remaining bases would provide a sufficient basis to deny the claim. This is particularly true because the judge or the government seeks to absolve the judge of failing to determine that the medical records are reasonably available because of Mr. Lynn's supposed negative credit, you know, adverse credibility. But if we're stripping that, then the question is to guess whether or not, in fact, it's the judge has to first make the determination that the medical records were reasonably available. No such determination has been made. And it should not be for this court to guess or for all of us to guess what the agency would say. It's respectfully asserted that the circumstances support Mr. Lynn's testimony that, in fact, there is no medical records to provide that he was told it was a surface wound and he was sent on his way and he recuperated at home with his father and his family, who, in fact, did provide an affidavit as well as testimony of his sister, confirming that she was informed that he was recuperating at home. And so he corroborated his claim in other manners. And the agency needs to indicate whether or not that is sufficient to corroborate. Even if they make the determination that corroboration would be required once we strip the determination, the negative credibility determination from the judge's decision, which we would respectfully assert should be stripped because it was unsupported by the record. Unless the court has any further questions, we will rest our brief. Thank you very much. Thank you. Thank you both. Well argued. Well, we have your arguments and your briefs and we will reserve decision. Thank you. Thank you. We have one more case on our calendar for today. It is taken on submission. That is number twenty thirty to forty one sides versus Paolano, because that concludes our arguments this morning. I will ask the deputy clerk to adjourn court.